## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

**JONG Y. LEE,** *et al.*

                Plaintiffs,

v.                                Civil Action No. 1:16-cv-01197-GBL-JFA

**THE BANK OF NEW YORK MELLON**
**F/K/A THE BANK OF NEW YORK, AS**
**TRUSTEE FOR THE**
**CERTIFICATEHOLDERS OF CWMBS,**
**INC., CHL MORTGAGE PASS-**
**THROUGH TRUST 2005-02 MORTGAGE**
**PASS-THROUGH CERTIFICATES,**
**SERIES 2005-02,** *et al.*

                Defendants.

### BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs, Jong Y. Lee ("Jong Lee") and Eun Soo Lee ("Eun Lee") (collectively, the

"Lees"), by counsel, set forth the following in opposition to the Motion to Dismiss

Complaint (the "Motion to Dismiss") filed pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure by Defendants The Bank of New York Mellon FKA The Bank

of New York, as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage

Pass-Through Trust 2005-02 Mortgage Pass-Through Certificates, Series 2005-02 ("BNY

Mellon Trustee"); New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing

("Shellpoint Mortgage"); and Samuel I. White, P.C., as Substitute Trustee ("White")

(collectively, the "Defendants").

## Introduction

The Lees' complaint sets forth detailed facts in support of their claims against the Defendants. *Parrish v. Fed. Nat'l Mortg. Ass'n* – Record Number 150454 (Va. June 16, 2016) ruled that averments on all fours with the Lees´ claim for rescission in Count One were sufficient to survive demurrer. Count Two expressly sets forth Shellpoint Mortgage's duties under 12 C.F.R. § 1024.41 and 12 U.S.C. § 2605(f), the breaches of those duties, and the damages sustained by the Lees from such breaches. As detailed below, the Defendants' request for dismissal of Count Two is based on mistaken legal and factual assertions.

In view of the recent holding of *Parrish*, the averments in Count Three set forth a claim for breach of contract for violation of HAMP administrative rules. Count Four sets forth the requisite elements of a claim for breach of the implied covenant of good faith and fair dealing as such claims have been recognized by this Court in the mortgage context.

## Facts

In 2004, the Lees entered into a mortgage loan (the "Loan"), consisting of a promissory note (the "Note"), signed by Jong Lee, and a deed of trust (the "Deed of Trust"), signed by the Lees and secured by the home located at 13036 Red Admiral Place, Fairfax, Virginia 22030 (the "home"). Compl. ¶¶ 6-7. BNY Mellon Trustee has

asserted rights as holder of the Note and owner of the Loan. *Id.* ¶ 9.

BNY Mellon Trustee engaged Bank of America, N.A. ("Bank of America") (and its predecessors in interest) as servicer of the Loan. *Id.* On or around May 31, 2015, BNY Mellon Trustee ended its engagement with Bank of America for servicing of the Loan and retained Shellpoint Mortgage as servicer of the Loan. *Id.* ¶ 10. At all times relevant to this case, Shellpoint Mortgage acted on its own and as agent in servicing the Loan on behalf of BNY Mellon Trustee. *Id.* ¶¶ 11-12.

The Lees fell into arrears as to the Note. *Id.* ¶ 14. BNY Mellon Trustee referred the loan to White for foreclosure. *Id.* ¶ 15.

Prior to the transfer of servicing to Shellpoint Mortgage, the Lees had a loss mitigation application pending with Bank of America. *Id.* ¶ 17. Even though the loss mitigation application pending with Bank of America was transferred to Shellpoint Mortgage, a representative of Shellpoint Mortgage insisted that the Lees submit a new loss mitigation application in June 2015. *Id.* ¶ 18.

After Shellpoint Mortgage, through a representative, requested a new loss mitigation application, the Lees submitted a completed loss mitigation application in June 2015. *Id.* ¶ 19. From the end of June 2015 through December 14, 2015, the Lees had a completed loss mitigation application pending with Shellpoint Mortgage. *Id.* Shellpoint Mortgage repeatedly requested that Eun Lee submit documents and/or information that had already been received by Shellpoint Mortgage. *Id.* ¶ 20. Each time

Shellpoint Mortgage requested documents and/or information from Eun Lee, she

promptly submitted the requested documents and/or information. *Id.*

The servicing of the mortgage loan by Shellpoint Mortgage and the treatment of

the Lees' loss mitigation application were subject to 12 U.S.C. § 2605(f) and 12 C.F.R. §

1024.41. *Id.* ¶¶ 21-28. 12 C.F.R. § 1024.41 provides, in pertinent part, as follows:

> (a)    *Enforcement and limitations.* A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f)). Nothing in section 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option. Nothing in section 1024.41 should be construed to create a right for a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to the evaluation for, or offer of, any loss mitigation option or to eliminate any such right that may exist pursuant to applicable law.
>
> ….
>
> (g)    *Prohibition on foreclosure sale.* If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:
>
>> (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
>>
>> (2) The borrower rejects all loss mitigation options offered by the servicer; or

(3) The borrower fails to perform under an agreement on a loss mitigation option.

*Id.*

12 U.S.C. § 2605(f) provides, in part, as follows:

(f) Damages and costs. Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals. In the case of any action by an individual, an amount equal to the sum of—

(A)     any actual damages to the borrower as a result of the failure; and

(B)     any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $ 2,000.

….

(3) Costs. In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

*Id.*

Prior to 2015, a servicer of the Loan had made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process. Compl. ¶ 26. BNY Mellon Trustee, through an agent, executed a document which recited that BNY Mellon Trustee was removing the prior trustee(s) or substitute trustee or trustees on the Deed of Trust and appointing White as substitute trustee on the Deed of Trust. *Id.* ¶ 27. Thereafter, Shellpoint Mortgage instructed White to foreclose on the home. *Id.* ¶ 28.

White acted on its own and as agent for Shellpoint Mortgage and BNY Mellon Trustee. *Id.*

The Deed of Trust permitted the Lender to "invoke the power of sale and any other remedies permitted by Applicable Law." *Id.* ¶ 29. The Deed of Trust specifically stated that the right of a foreclosure sale was limited to a sale complying with applicable law: "[a]ll rights…contained in this Security Instrument are subject to any requirements and limitations of Applicable Law." *Id.* ¶ 30. In paragraph J of a section on definitions, the Deed of Trust defined "Applicable Law" to mean "all controlling applicable federal, state and local statues, regulations, ordinances and administrative rules and orders (that have the effect of laws) as well as all applicable final, non-appealable judicial opinions." *Id.* ¶ 31. Thus, any foreclosure, according to the terms of the Deed of Trust, had to be in accordance with all controlling applicable federal regulations. *Id.*

As holder of the Note, BNY Mellon Trustee was bound to comply with the "applicable law" provisions of the Deed of Trust. *Id.* ¶ 32. The requirement of BNY Mellon Trustee's compliance with the "applicable law" provisions of the Deed of Trust extended to compliance of Shellpoint Mortgage with "applicable law" in the servicing of the loan as agent for BNY Mellon Trustee. *Id.*

Shellpoint Mortgage, in its capacity as servicer on the Loan, instructed White to foreclose on the home, and White conducted a purported foreclosure sale (the

6

"Purported Sale") on December 14, 2015. *Id.* ¶¶ 34, 40. Prior to the Purported Sale,

Shellpoint Mortgage (1) failed to make a determination as to the Lees' loss mitigation

application which had been pending since late-June 2015 and (2) had not denied the loss

mitigation application or sent the Lees a notice stating that they were not eligible for

any loss mitigation option. Before the Purported Sale, the Lees had not been offered a

loss mitigation option which they refused and had not failed to perform under an

agreement on a loss mitigation option offered by Shellpoint Mortgage. *Id.* ¶ 37.

 The Lees averred Shellpoint Mortgage and BNY Mellon Trustee were not

permitted under the "applicable law" provision of the Deed of Trust to proceed to

foreclosure of the home except in compliance with 12 C.F.R. § 1024.41. *Id.* ¶ 38. The Lees

averred that the Purported Sale was void, alternatively, voidable, because it had been

conducted in breach of controlling applicable federal regulations and the "applicable

law" provision of the Deed of Trust. *Id.* ¶ 41. The foreclosure process by Shellpoint

Mortgage was subject to federal guidelines promulgated by the Secretary of the U.S.

Treasury, which prohibited advertisement of the home while the Lees had a loan

modification application pending under the federal Home Affordable Modification

Program ("HAMP"). *Id.* ¶¶ 62-76. The Lees averred that the federal guidelines issued

under HAMP constituted "applicable law" under the Deed of Trust, and the Purported

Sale breached the Deed of Trust, rendering it void, alternatively, voidable. *Id.* ¶¶ 67-80.

Shellpoint Mortgage's actions also breached the requirements of RESPA, specifically 12

U.S.C. § 2605(f). *Id.* ¶ 58. In addition to the breaches of RESPA and the Deed of Trust, the actions of BNY Mellon Trustee breached the implied covenant of good faith and fair dealing contained in the Note and the Deed of Trust. *Id.* ¶¶ 82-86.

As a proximate result of the breaches of RESPA, the Deed of Trust, and the implied covenant of good faith and fair dealing, the Lees sustained the following damages: (1) loss of record title to the home; (2) substantial loss of record equity in the home, taking into consideration the potential for a deficiency judgment by BNY Mellon Trustee or an assignee; (3) loss of quiet enjoyment of the home; (4) harm to Jong Lee's credit record; (5) expenditure of funds to retain legal counsel to oppose eviction; (6) substantial inconvenience; and (7) lost interest on their damages. *Id.* ¶¶ 53, 59, 80, and 87. The Lees have suffered significant emotional distress, including but not necessarily limited to worry, anxiety, fear, hopelessness, shame, and embarrassment, as a result of Shellpoint Mortgage's breaches of RESPA. *Id.* ¶ 59.

## Standard of Review

A Rule 12 motion to dismiss is proper if a plaintiff has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. . . .[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, . . . , to 'state a claim to relief that is

8

plausible on its face.'" *Ashcroft v. Iqbal*, 550 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed.

2d 929 (2007)). "When there are well-pleaded factual allegations, a court should assume

their veracity and then determine whether they plausibly give rise to an entitlement to

relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

at 678 (citing *Twombly*, 550 U.S. at 556). "'Detailed factual allegations'" are not required,

but allegations must be more than "labels and conclusions," or "a formulaic recitation of

the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at

556).

## <u>Argument</u>

1.  **Under *Parrish v. Fed. Nat'l Mortg. Ass'n* – Record Number 150454 (Va. June 16, 2016), the Lees Stated a Claim for Breach of the Deed of Trust for Failure to Comply with 12 C.F.R. § 1024.41**

In *Parrish, supra*, the Supreme Court of Virginia ruled that averments on all fours

with the Lees´ claim in Count One were sufficient to survive demurrer, stating, in

pertinent part, the following:

> In most foreclosure cases, a trustee's deed will satisfy the foreclosure
> purchaser's burden to establish that it acquired a right of possession after
> the homeowner's original, lawful entry, and the homeowner will have no
> good-faith basis to contest it. However, in limited circumstances, the
> homeowner could allege facts sufficient to place the validity of the trustee's
> deed in doubt. In such cases, the general district court's lack of subject

matter jurisdiction to try title supersedes its subject matter jurisdiction to try unlawful detainer and the court must dismiss the case without prejudice. *Warwick*, 56 Va. (15 Gratt.) at 542 ("[O]n being convinced that the case involves a bona fide claim of title to real estate," a court not of record "is bound to dismiss [the proceeding] immediately.").[4]

This holding does not mean that any naked allegation that the trustee's deed is invalid will put the deed in doubt, thereby divesting the general district court of jurisdiction. The question of title raised by the homeowner's allegations must be legitimate. *Id.* at 542 (requiring dismissal if "the case involves a bona fide claim of title" (emphasis added)). Because "a court always has jurisdiction to determine whether it has subject matter jurisdiction," *Morrison*, 239 Va. at 170, 387 S.E.2d at 755, the court has the authority to explore the allegations to determine whether, if proven, they are sufficient to state a bona fide claim that the foreclosure sale and trustee's deed could be set aside in equity. Stated differently, the allegations must be sufficient to survive a demurrer had the homeowner filed a complaint in circuit court seeking such relief.

For example, we have indicated that a trustee's deed could be set aside in "cases involving fraud, collusion with the purchaser, and a foreclosure sale price of such gross inadequacy that it shocks the conscience of the court." *Ramos v. Wells Fargo Bank, NA*, 289 Va. 321, 324 n.\*, 770 S.E.2d 491, 494 n.\* (2015) (per curiam) (internal alteration and quotation marks omitted). This list is not exhaustive. We have also said that a foreclosure sale could be set aside in equity when it was conducted in material breach of the deed of trust. *Smith v. Woodward*, 122 Va. 356, 374, 94 S.E. 916, 921 (1918) ("[A] court of equity will not permit a grantor in trust to be deprived of his property by an unauthorized act of the trustee, and will set aside a sale and conveyance where the trustee has exceeded the authority conferred upon him, or sold the grantor's land after the purposes of the trust have been accomplished, and especially where the purchaser has notice, actual or constructive, of the facts."); see also *Wasserman v. Metzger*, 105 Va. 744, 752-53, 54 S.E. 893, 895 (1906) (collecting cases).[5]

If the general district court satisfies itself that the allegations are insufficient, it retains subject matter jurisdiction and may adjudicate the case on the merits. However, if the court determines that the allegations are sufficient, it lacks subject matter jurisdiction over the case and it must be dismissed without prejudice.[6] The foreclosure purchaser may then seek appropriate

remedies in the circuit court under its original jurisdiction.[7]

We must now apply this rule to the case before us. The Parrishes' only detailed allegations are in the pleadings they filed in the general district court. However, in their other assignment of error they assert that the circuit court erred by considering those pleadings in their de novo appeal. They argue that the nature of a de novo appeal precludes such consideration. Fannie Mae responds that the court did not err because Code § 16.1-112 requires the general district court to transmit the record of the original proceedings to the circuit court when an appeal is taken there.

The burden lies with the appellant to show reversible error below. *Lindsey v. Lindsey*, 158 Va. 647, 654, 164 S.E. 551, 553 (1932). Apart from Code § 16.1-106, the Parrishes cite no legal authority for their argument. Although Code § 16.1-106 provides that appeals from courts not of record are heard by the circuit court de novo, Code § 16.1-112 requires the lower court to transmit its record to the circuit court. We have previously held that although de novo, an appeal in the circuit court is a continuation of the original case. *Stacy v. Mullins*, 185 Va. 837, 840, 40 S.E.2d 265, 266 (1946). Accordingly, we find no basis to conclude that the circuit court erred by considering the pleadings filed in the general district court.

Turning to the allegations set forth in those pleadings, we note that the Parrishes alleged that their deed of trust incorporated 12 C.F.R. § 1024.41(g) as a condition precedent to foreclosure. That regulation prohibits a foreclosure sale after a homeowner submits a complete loss mitigation application under certain circumstances. They alleged that they submitted such an application and that none of the exceptions provided in the regulation (which would have permitted Fannie Mae and its agent to proceed to foreclosure notwithstanding the application) applied. We may further infer from their allegations that the foreclosure purchaser, Fannie Mae, was aware of the alleged violation of the deed of trust because it was the lender that allegedly committed the violation. We conclude that these allegations are sufficient that, if proved, they could satisfy a court of equity to set aside the foreclosure.

[4] We said in *Warwick* that subject matter jurisdiction to try title must be "expressly conferred [upon courts not of record] by statute." 56 Va. (15 Gratt.) at 542. Code §§ 16.1-77(3) and 8.01-126 do not expressly confer that power upon general district courts. The General Assembly may, of course,

amend the statutes to do so, or it may be satisfied that circuit courts have subject matter jurisdiction both to try title and to adjudicate actions for unlawful detainer under Code § 8.01-124, which permits foreclosure purchasers to initiate unlawful detainer actions in circuit court.

[5] A general allegation that the trustee breached the deed of trust is not sufficient. The homeowner's allegations must (1) identify with specificity the precise requirements in the deed of trust that he or she asserts constitute conditions precedent to foreclosure, (2) allege facts indicating that the trustee failed to substantially comply with them so that the power to foreclose did not accrue, and (3) allege that the foreclosure purchaser knew or should have known of the defect. *See Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 515-18, 758 S.E.2d 55, 60-61 (2014).

[6] Our decision today that general district courts lack subject matter jurisdiction over unlawful detainer cases where the homeowner raises a legitimate question of title does not reopen for collateral attack past cases where homeowners could have presented such questions but did not. General district courts have subject matter jurisdiction over unlawful detainer cases. What they lack is subject matter jurisdiction to try title. Where the homeowner presented no question of title, the court's jurisdiction was complete.

Similarly, where a homeowner does present a question of title but the general district court determines that it is not legitimate, that decision may be voidable if the homeowner challenges it as erroneous on direct appeal. However, the decision would not be subject to collateral attack because the general district court will have rendered no judgment it lacked subject matter jurisdiction to render.

[7] Nothing in our decision today relieves a homeowner of the obligation to pay his or her lender, which arises from the note, not the deed of trust. The deed of trust merely secures the indebtedness evidenced by the note. As we indicated in *Mathews v. PHH Mortgage Corp.*, 283 Va. 723, 732-33 & n.2, 724 S.E.2d 196, 200 & n.2. (2012), a breach by one party of the note does not relieve the other party of its obligations under the deed of trust, or vice versa.

*Parrish* at *6-9. A copy of the *Parrish* decision accompanies this memorandum as

"Exhibit A." The appellee in *Parrish* filed a Petition for Rehearing, which was denied by the Supreme Court of Virginia this month.

The averments in the Lees complaint are on all fours with the averments held to be sufficient to state a claim for rescission in *Parrish*. When presented with a motion to dismiss under *Parrish*, the Circuit Court of Fairfax County (the "Circuit Court") dismissed an unlawful detainer action filed by BNY Mellon Trustee against the Lees (the "Unlawful Detainer Action"). Copies of the pertinent pleadings and the Circuit Court's Dismissal Order accompany this memorandum as "Exhibit B."[1] The Circuit Court made its decision in the Unlawful Detainer Action based on the averments in the complaint currently before the Court in this case.

The holding of *Parrish* and the Circuit Court's decision in the Unlawful Detainer Action establish that the Lees have pled a claim for rescission and damages based on BNY Mellon Trustee's breach of the Deed of Trust by foreclosure in violation of 12 C.F.R. § 1024.41(g).

**2.   The Lees' Request for Rescission Seeks Relief for Breach of the Deed of Trust, Not Breach of RESPA or HAMP**

The Defendants' assertion that neither RESPA nor HAMP provides for rescission

---

[1] However, the decision of the Circuit Court in the unlawful detainer is not dispositive as to the final determination of title in this action because of Va. Code § 8.01-130, which provides: "[n]o judgment in an action brought under the provisions of this article shall bar any action of trespass or ejectment between the same parties, nor shall any such judgment or verdict be conclusive, in any such future action, of the facts therein found." *Id.*

knocks down a straw man. The Lees' complaint seeks rescission of the Purported Sale

based on material departure from conditions precedent to foreclosure contained in the

Deed of Trust. As set forth in *Parrish, supra*, the Lees have:

> (1) identif[ied] with specificity the precise requirements in the deed of trust
> that [they] assert[] constitute conditions precedent to foreclosure, (2)
> allege[d] facts indicating that the trustee failed to substantially comply with
> them so that the power to foreclose did not accrue, and (3) allege[d] that the
> foreclosure purchaser knew or should have known of the defect.

*Parrish* at fn. 5 (citing *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 515-18, 758 S.E.2d 55,

60-61 (2014)). Because the Lees have set forth a claim for rescission sufficient to survive

demurrer in state court, this Court should deny the Motion to Dismiss as to the

rescission claims.

### 3.  RESPA and HAMP Constitute Applicable Law Under the Deed of Trust

The Deed of Trust defines "applicable law" to mean "all controlling federal, state

and local statutes, regulations, ordinances and administrative rules and orders (that

have the effect of law) as well as all applicable final, non-appealable judicial opinions."

Compl. ¶ 31. Under this definition, the question of incorporation into the Deed of Trust

hinges on whether the applicable regulation, administrative rule, or order is

"controlling" over the Deed of Trust.

RESPA, in its current iteration, controlled and limited BNY Mellon Trustee's

right to foreclose because (1) 12 C.F.R. § 1024.5(c)(1) provides that "[s]tate laws that are

inconsistent with RESPA or this part are preempted to the extent of the inconsistency;"

(2) RESPA and its implementing regulations existed at the time of execution of the Deed of Trust (although, not the specific regulations at issue in this case), and (3) the Deed of Trust specifically defines RESPA to mean:

> the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

12 C.F.R. § 1024.5(c)(1) and Memo Supp. Defendants' Motion to Dismiss, Exh. B.

The incorporation of HAMP administrative rules presents a more difficult question. Counsel for the Lees acknowledges the decisions in *Condel v. Bank of America, N.A.*, No. 12-CV-212, 2012 WL 2673167 (E.D. Va. Jul. 5, 2012) and *Cook v. CitiFinancial, Inc.*, No. 14-CV-7, 2014 WL 2040070 (W.D. Va. May 16, 2014). The Lees submit that HAMP administrative rules are also "controlling" as to the relationship between the Lees and their mortgage lender and servicer. Accordingly, the Deed of Trust requires compliance with the HAMP administrative rules as "applicable law." As articulated in *Parrish*, the Supreme Court of Virginia has taken a rather expansive view of the rights of homeowners facing foreclosure. The Lees' counsel submits that this Court should follow *Parrish*, which held that 12 C.F.R. § 1024.41 had been incorporated into a borrowers' Deed of Trust, in applying HAMP administrative rule incorporation to this case. The lender drafted the Deed of Trust, and the language related to "applicable law"

should be construed against the drafter. The meaning of "applicable law" in the Deed of

Trust is open to interpretation and should not be decided as a matter of law at this stage

of the proceeding.

**4.   The Lees Application for Loss Mitigation Falls Within RESPA Guidelines**

The Lees' loss mitigation application invoked the protections of 12 C.F.R. §

1024.41(g) and subjected Shellpoint Mortgage to liability under 12 U.S.C. § 2605(f)

because (1) Bank of America never completed its review of the Lees' loss mitigation

application (Compl. ¶¶ 16-18)[2] and (2) even if Bank of America had completed its

review, 12 C.F.R. § 1024.41(i) obligated Shellpoint Mortgage "to comply with [its

requirements] regardless of whether [the Lees] received an evaluation of a complete

loss mitigation application from [Bank of America]." Suppl. I. to 12 C.F.R. § 1024.41(i)

(CFPB Official Interp.)[3]. The official interpretation of 12 C.F.R. § 1024.41(i) by the

Consumer Financial Protection Bureau (the "CFPB") should be held to be controlling

because "an agency's interpretation of its own regulations is controlling unless plainly

erroneous or inconsistent with the regulations being interpreted." *Auer v. Robins*, 519

U.S. 452, 461 (1997). The *Auer* standard applies in this instance because the language of

12 C.F.R. § 1024.41(i) is ambiguous as to the duties of transferee servicers, such as

---

[2] Paragraph 17 of the complaint states that the Lees' loss mitigation application with
Bank of America was "pending" at the time servicing was transferred to Shellpoint
Mortgage. The use of the term pending necessarily means that Bank of America never
completed its review of the application.

[3] A copy of the official interpretation accompanies this memorandum as "Exhibit C."

Shellpoint Mortgage.

Aside from the application of the CFPB's official interpretation, 12 C.F.R. § 1024.41(g) barred Shellpoint Mortgage from foreclosing on the home on December 14, 2015 because (1) Bank of America never completed its review of the Lees' loss mitigation application – it was pending when the servicing transfer occurred and (2) Shellpoint Mortgage had an independent obligation under 12 C.F.R. § 1024.41(g) based on the loss mitigation application it accepted from the Lees.

As set out above, Shellpoint Mortgage's attempt to escape the duties imposed by 12 C.F.R. § 1024.41(g) is unavailing.

   5. **Samuel I. White, P.C., as Substitute Trustee is a Necessary Party**

The Lees have named White as a party to this complaint because the Supreme Court of Virginia has held that the foreclosure trustee responsible for a disputed sale is a necessary party in an action to set aside that sale. *Wills v. Chesapeake Western Ry.*, 178 Va. 314, 16 S.E.2d 649 (1941). Because the Lees have sufficiently pled claims for rescission, the Court should deny the request to dismiss White from this action.

   6. **The Lees Pled a Claim for Breach of The Implied Covenant of Good Faith and Fair Dealing**

This Court has recognized the implied covenant of good faith and fair dealing in a mortgage context. *Bourdelais v. JPMorgan Chase Bank, N.A.*, No. 3:10-CV-670 (E.D. Va. Nov. 5, 2012) and *Acuna* v. *Chase Home Finance, LLC,* No. 3:10-CV-905, 2011 U.S. Dist. LEXIS 52971 (E.D. Va. May 17, 2011). The implied covenant of good faith and fair

dealing "prohibits a party from acting arbitrarily, unreasonably, and in bad faith." *SunTrust Mortg., Inc.* v. *Mortgages. Unlimited, Inc.,* No. 3:11CV861-HEH, 2012 U.S. Dist. LEXIS 74106, at *8-9 (E.D. Va. May 29, 2012). "It is a basic principle of contract law in Virginia that a party may not exercise contractual *discretion* in bad faith." *Virginia Vermiculite, Ltd.* v. *W.KGrace & Co.,* 156 F.3d 535, 542 (4th Cir. 1998).

The Lees have averred the necessary elements of a claim for breach of an implied covenant of good faith and fair dealing under Virginia law, namely "(1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Enomoto* v. *Space Adventures, LTD,* 624 F.Supp.2d 443, 450 (E.D. Va. 2009). Here, BNY Mellon Trustee had discretion to cancel the Purported Sale of the home, but exercised that discretion in bad faith by foreclosing in violation of HAMP administrative rules and 12 C.F.R. § 1024.41(g). The reference to Fannie Mae in this Count by the Lees' counsel is a typographical error. The Count sets forth a claim against BNY Mellon Trustee, and the request for dismissal based on the incorrect reference to Fannie Mae seeks to elevate form over substance. If necessary, the Lees will amend paragraph 88 of the complaint to replace "Fannie Mae" with "BNY Mellon Trustee."

### 7. If the Court Grants the Motion to Dismiss, in Whole or in Part, the Lees Seek Leave to Amend

The Lees submit that the Motion to Dismiss should be denied. However, if the Court grants the Motion to Dismiss, the Lees seek leave to file an Amended Complaint to resolve any pleading deficiencies identified by the Court. The Lees have not yet

18

amended their Complaint.

## Conclusion

Wherefore, Jong Y. Lee and Eun Soo Lee pray that the Court deny Defendants'

motion to dismiss their complaint, alternatively, that the Court grant them leave to file

an amended complaint.

Respectfully submitted,

**JONG Y. LEE**
**EUN SOO LEE,**

By_____/s/ Drew D. Sarrett_____
Counsel

Drew D. Sarrett (VSB No. 81658)
The Sarrett Law Firm, PLLC
513 Forest Avenue, Suite 205
Richmond, Virginia 23229
Phone: (804) 303-1951
Fax: (804) 250-6005
E-mail: drew@sarrettlawfirm.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of October, 2016 (after 5 p.m.), I will

electronically file the foregoing *Notice of Change of Address and Contact Information for*

*Counsel* with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to

counsel for all parties by operation of Court's electronic filing system.

_____/s/ Drew D. Sarrett_____
Drew D. Sarrett